IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNION HOME MORTGAGE CORP.,** | ) | **CASE NO. 1:23 CV 00996** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **EVERETT FINANCIAL, INC.,** | ) | |
| **dba SUPREME LENDING, et al.,** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **Defendants.** | ) | **AND ORDER** |

This matter is before the Court on defendant Everett Financial Inc., dba Supreme Lending's ("Supreme Lending") *Motion to Dismiss for Lack of Personal Jurisdiction* (ECF #12), filed on June 15, 2023. Plaintiff Union Home Mortgage ("Union Home Mortgage") filed an opposition to the motion on July 17, 2023 (ECF #24). Supreme Lending filed a reply on July 31, 2023 (ECF #27).

For the reasons stated below, *Defendant Everett Financial Inc., dba Supreme Lending's Motion to Dismiss for Lack of Personal Jurisdiction* (ECF #12) is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2023, plaintiff Union Home Mortgage filed a *Verified Complaint* (ECF #1) against individual defendants Andrew Kyle Tuttle, James M. Fisher, Kathryn Henry, and Ryan Larson, as well as corporate defendant Supreme Lending, related to an employment dispute

between these two competitors in the mortgage lending industry, and specifically about four former employees (Tuttle, Fisher, Henry, and Larson) who moved from one of the competitors (Union Home Mortgage) to the other (Supreme Lending) over the first four months of 2023. At its essence, this is a case alleging "wrongful recruitment" by Supreme Lending of individual defendants Tuttle, Fisher, Henry, and Larson.

Taking the allegations and record as asserted by the plaintiff as true and in the light most favorable to the plaintiff, the pertinent facts are as follows.

Plaintiff Union Home Mortgage is in the business of providing homeowners and prospective home buyers with mortgage and refinance loan products. (ECF #1, *Verified Complaint*, ¶ 3). Union Home Mortgage is an Ohio corporation with its principal place of business in Strongsville, Ohio. (ECF #1, ¶ 12).

Each of the individual defendants is a former employee of Union Home Mortgage. Andrew Kyle Tuttle was previously employed by Union Home Mortgage as a District Manager, at its office located in Spring Hill, Florida. (ECF #1, ¶ 4). James M. Fisher was previously employed by Union Home Mortgage as an Area Sales Manager in one of Union Home Mortgage's Florida offices. (ECF #1, ¶ 5). Kathryn Henry was previously employed by Union Home Mortgage as a Branch Manager in one of Union Home Mortgage's Florida offices. (ECF #1, ¶ 6). Ryan Larson was previously employed by Union Home Mortgage as a Branch Manager in one of Union Home Mortgage's Florida offices. (ECF #1, ¶ 7). All of the individual defendants are residents and citizens of Florida. (ECF #1, ¶ 14).

Defendant Supreme Lending is a market competitor to Union Home Mortgage in the home mortgage lending and refinancing industry, which advertises having 31 offices in Florida.

(ECF #1, ¶ 8). Supreme Lending is a corporation headquartered in Dallas, Texas. (ECF #1, ¶ 13). While Supreme Lending operates "approximately 275 branch offices in approximately 30 states," (ECF #14, *Declaration of Noah Zimmerman*, attached as an exhibit to Supreme Lending's motion to dismiss, ¶ 4), its only Ohio connections are maintaining a corporate agent in Ohio, and operating a single branch office in the State of Ohio, which employs only eight persons – three of whom work at the branch to originate loans, and five who perform corporate work remotely. (ECF #14, ¶ 5). Supreme Lending's single Ohio branch accounted for approximately 0.75% of its 2022 annual revenues. (ECF #14, ¶ 5). Plaintiff Union Home Mortgage's *Verified Complaint* identifies no greater Ohio presence than this single office, (ECF #1, ¶ 13). There is no assertion that any of the facts related to this case have a connection to Supreme Lending's single Ohio office or its employees.

The facts of this case begin with Amerifirst Financial Corporation ("Amerifirst"). Amerifirst was a competitor of both Union Home Mortgage and Supreme Lending for years. (ECF #1, ¶ 27). Amerifirst employed individual defendants Tuttle, Fisher, Henry, and Larson in various offices in Florida. (ECF #1, ¶¶ 4-7 & 28). In November 2022, Union Home Mortgage agreed to purchase some of the assets and liabilities of Amerifirst, with the purchase to be effective on December 31, 2022. (ECF #1, ¶ 33). Following the purchase of Amerifirst by Union Home Mortgage, each of the individual defendants signed new employment agreements with Union Home Mortgage in December 2022. (ECF #1, ¶ 49). Under the new employment agreements, the individual defendants agreed that, until December 2026 – two years after the end of a defined restricted period – they would not "directly or indirectly, on behalf of themselves or a Competitive Entity, employ or seek to employ any person who is employed by [Union Home

Mortgage] or otherwise induce such person to leave his/her employment with [Union Home Mortgage].'" (ECF #1, ¶ 50, quoting ECF #1-1, *Conditional Retention Bonus and Employmee [sic] Agreement*, at ¶ 7).[1] Under the new employment agreements, each of the individual defendants was also paid a conditional retention bonus of varying amounts. (ECF #1, ¶ 57; ECF #1-1, ¶ 3).[2] The employee agreements further provided that if the individual defendant's "employment with [Union Home Mortgage] ends for any reason prior to the second anniversary of the Effective Date [in December 2024], Employee agrees to repay the entire bonus to [Union Home Mortgage]." (ECF #1, ¶ 58, ECF #1-1, ¶ 4(a)).

On April 28, 2023, all of the individual defendants resigned from Union Home Mortgage, and sometime later became employed by Supreme Lending, joining approximately 50 other former Union Home Mortgage employees who changed employment from Union Home Mortgage to Supreme Lending over the prior four months. (ECF #1, ¶ 59). It is also alleged in the *Verified Complaint* that "Tuttle took a group of his Union Home subordinates to visit Supreme [Lending's] headquarters in Dallas, Texas on or about April 12, 2023, before every single one of them departed for Supreme [Lending] on or about April 28, 2023." (ECF #1, ¶ 69). The *Verified Complaint* continues, "[i]n fact, Tuttle is believed to have taken his Union Home issued laptop with him to Supreme and logged on to Union Home system from Dallas." (ECF

---

[1] The quoted text, identified in the *Verified Complaint* as appearing within paragraph 6 of the employment agreements, actually appears in paragraph 7.

[2] Exhibit A to the *Verified Complaint* (ECF #1-1) contains the essentially identical employment agreements of each of the four individual defendants, with the only differences being the amounts of the conditional retention bonuses paid to each. The remaining text of each is identical.

-4-

#1, ¶ 69).

No fact alleged in the *Verified Complaint* related to the recruitment or employment of the four individual defendants appears to have any connection to Ohio. None of the individual defendants resides in Ohio. None of the individual defendants is identified as ever working in Ohio or doing any business there. None of the communications or other recruitment efforts identified in the *Verified Complaint* took place in, or was even directed toward, Ohio. The only connection to Ohio asserted in the *Verified Complaint*, or in Union Home Mortgage's motion papers, is that each of the individual employee defendant's employment agreements contained a "Choice of Law and Venue" clause agreeing to have Ohio law govern any disputes, and that the individual employees and Union Home Mortgage agree to an Ohio venue:

> <u>Choice of Law and Venue</u>. The laws of the State of Ohio shall govern all aspects of this Agreement. Employee and the Company [Union Home Mortgage] agree that any claim arising out of or related in any way to the Employee's employment or termination of that employment, including claims arising under this Agreement, shall be filed in a state or federal court in Ohio. Employee and the Company consent to personal jurisdiction in such a court and waive any right to seek a transfer of venue or to assert forum non-conveniens. Further, the parties expressly waive trial by jury for all such claims.

(ECF #1-1, *Conditional Retention Bonus and Employmee [sic] Agreement*, at ¶ 16).

Notably, Superior Lending is not a party to this agreement.

## II. LEGAL ANALYSIS

### A. <u>Union Home Mortgage's Claims</u>

Defendant Supreme Lending moves for dismissal of the single count of the *Verified Complaint* (ECF #1) asserted against it, pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF #12). The only count of the five-count *Verified Complaint* naming Supreme Lending as a Defendant is Count V, alleging tortious interference with contract

under Ohio law (ECF #1, ¶¶ 101-112), along with its general inclusion in a non-enumerated prayer for preliminary and permanent injunctive relief, asserted against all Defendants (ECF #1, ¶¶ 113-120). Each of the other counts of the *Verified Complaint* is asserted against one or more of the individual defendants only, and are not a subject of Supreme Lending's motion.[3]

### B. Legal Standards

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of demonstrating that personal jurisdiction over the defendant exists. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012); *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir, 2002). In response to the motion, a plaintiff may not simply rest on the pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

In analyzing the motion, a district court may rely on affidavits alone in reaching a decision, it may allow some discovery to assist with its decision, or it may conduct an evidentiary hearing to resolve any apparent factual disputes. *J4 Promotions, Inc. v. Splash Dogs, LLC*, Case No. 08-CV-977 2009 U.S. Dist LEXIS 11023, at *13 (N.D. Ohio Feb. 13, 2009) (citing *Cleveland Browns Football Co., LLC v. Hawaii-Pacific Apparel*, 90 F. App'x 868, 869 (6th Cir. 2004)). "The method selected is left to the discretion of the district court." *Id.* (quoting *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 704 (N.D. Ohio 2006)).

---

[3]  *See Verified Complaint* (ECF #1), at ¶¶ 80-86 (Count I, alleging breach of contract against all of the individual defendants), ¶¶ 87-90 (Count II, alleging breach of non-solicitation covenant against Defendant Tuttle), ¶¶ 91-95 (Count III, alleging breach of contractual duty of loyalty against Defendant Tuttle) & ¶¶ 96-100 (Count IV, alleging breach of common law duty of loyalty against Defendant Tuttle).

When a court considers a motion to dismiss based on affidavits alone, the pleadings and affidavits must be construed in a light most favorable to the plaintiff, and the plaintiff need only advance a *prima facie* showing of personal jurisdiction to overcome the defendant's motion. In order to determine whether personal jurisdiction over a defendant exists, a district court must apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 2006).[4]

Personal jurisdiction falls into two categories, general and specific. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction exists over a defendant when its "contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Specific jurisdiction exists when a plaintiff's claims arise out of or relate to a defendant's contacts with the forum state. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997); *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).

### 1. General Jurisdiction

While one of the paragraphs of the *Verified Complaint* seems to imply an assertion of

---

[4] In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the U.S. Constitution. *See* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution"); *see also Aerodyne Envtl. v. Kierton, Inc.*, 628 F. Supp. 3d 744, 750 (N.D. Ohio 2022).

general jurisdiction over Supreme Lending, (ECF #1, PageID # 4, ¶ 21),[5] Union Home Mortgage has not produced evidence of the type of "continuous and systematic" contacts with Ohio necessary to establish general jurisdiction over Supreme Lending. Nor does the record support the exercise of general jurisdiction over Supreme Lending.[6] In its opposition brief, Union Home

---

[5] "Furthermore, this Court has personal jurisdiction over Supreme pursuant to R.C. §§ 2307.381, 2307.382 because Supreme transacts business and contracts to supply services in the state of Ohio through – at a minimum – its Hilliard, Ohio branch office." (ECF #1, PafeID #4, ¶ 21).

[6] The Court is aware of the Supreme Court's recent plurality decision in *Mallory v. Norfolk Southern Ry*, Case No. 21-1168, 143 S. Ct. 2028 (2023); 2023 U.S. LEXIS 2786 (Decided June 27, 2023), issued by the Supreme Court ten days after the filing of Union Home Mortgage's opposition brief (ECF #24, filed June 17, 2023), in which general jurisdiction over Defendant Norfolk Southern Railway in Pennsylvania was upheld based on Norfolk Southern's registration to do business in Pennsylvania, despite the fact that none of the operative facts occurred in the State.

In *Mallory*, there was no question that Norfolk Southern had extensive and ongoing operations in Pennsylvania well beyond anything that Supreme Lending has in Ohio – though that fact alone is not enough to create general jurisdiction, *see, e.g.*, *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414 (holding that although BNSF operated a facility in Montana, had more than 2,000 employees in Montana, and more than 2,000 miles of Montana railroad tracks, BNSF was not subject to general jurisdiction in Montana); *Daimler AG v. Bauman*, 571 U.S. 117, 136-39 (2014) (holding that California lacked general jurisdiction over defendant even though it operated multiple California-based facilities, it was the largest supplier of luxury vehicles in Caliofornia, and its in-State sales accounted for 2.4% of its total sales).

The key operative fact of the *Mallory* decision was that the Pennsylvania statute at issue acted as an *explicit* consent to general jurisdiction as part of the "registration to do business" process, whereas the corollary Ohio statutes contain no such consent provision. *Compare* 42 PA. CONS. STAT. § 5301(a)(2)(i) ("The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general jurisdiction over such person, . . . [i]ncorporation under or qualification as a foreign corporation under the laws of this Commonwealth") *with* OHIO REV. CODE § 1703.03 (no right to transact business without a license, with exceptions not pertinent here) and § 1703.04 (containing no reference to general personal jurisdiction). *See also Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("As we read *Bendix* [*Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 892-93 (1988)], a case

-8-

Mortgage does not meaningfully contest this point. Accordingly, to the extent the *Verified Complaint* seeks to assert general jurisdiction over Supreme Lending, it fails to do so.

### 2. Specific Jurisdiction

To establish specific personal jurisdiction over a defendant under Ohio law, the Court must find that: (1) the defendant is subject to long-arm jurisdiction under one of the enumerated bases of jurisdiction in Ohio's long-arm statute; and (2) jurisdiction must accord with the Due Process Clause of the U.S. Constitution. *Conn v. Zacharov*, 667 F.3d 705, 711 (6th Cir. 2012). "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." *Aerodyne Envtl. v. Keirton*, 628F. Supp. 3d 744, 749 (N.D. Ohio 2022) (quoting *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021)); *see also International Shoe Co. v. State of Wash*, 326 U.S. 310, 316 (1945) ("[I]n order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'") (inserts supplied).

#### a. Ohio's Long Arm Statute

Ohio's long-arm statute confers specific personal jurisdiction over a defendant who engages in any of nine enumerated activities that occur "in this state." OHIO REV. CODE

---

from our Circuit, the Supreme Court was saying that the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction. . . . In addition, the Ohio Supreme Court has already rejected the proposition that service of process may be equated with personal jurisdiction.").

§ 2307.382(A)(1)-(9). Union Home Mortgage cites two of the nine provisions, specifically subsections (4) and (6):

> **§ 2307.382 Personal Jurisdiction**
>
> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> * * * * *
>
> (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> * * * * *
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state[.]

(See ECF #24, *Union Home Mortgage Corp's Memorandum in Opposition to Defendant Everett Financial Inc., D/B/A Supreme Lending's Motion to Dismiss for Lack of Personal Jurisdiction*, PageID #268 [p.5 of brief]).

Union Home Mortgage's theory of long-arm jurisdiction, as to both subparts (A)(4) and (A)(6), rests on the assertion that because Union Home Mortgage's principal place of business is in Ohio, any economic injury resulting from Supreme Lending's recruitment "necessarily occurred in Ohio." (ECF #24, *Union Home Mortgage's Memorandum in Opposition to Supreme Lending's Motion to Dismiss*, PageID #269). Union Home Mortgage then argues that "Supreme [Lending's] regular and persistent business conduct in Ohio satisfies the second requirement of Section (A)(4)," (ECF #24, PageID #269). As to subpart (A)(6), Union Home Mortgage asserts

that Supreme Lending also "knew or should have reasonably expected" that its Texas and Florida recruitment efforts toward Florida-based Union Home Mortgage employees to migrate to Florida-based Superior Lending facilities "would injure Union Home [Mortgage] in Ohio," (ECF #24, PageID #270).

Taking the allegations of the *Verified Complaint* in a light most favorable to the Plaintiff, as this Court is required to do at this stage of the case, and reading Ohio's long-arm statute "to the limits of the U.S. Constitution" under OHIO REV. CODE § 2307.382(C), Union Home Mortgage has arguably satisfied the requirements of Ohio's long-arm statute, despite what appears to be rather minimal "regular and persistent business conduct" in Ohio conducted by Supreme Lending, and taking as true the assertion that Supreme Lending was at least aware of Union Home Mortgage's state of incorporation and principal place of business.

But the analysis does not end there. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) ("The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements"). To establish personal jurisdiction over Supreme Lending, Union Home Mortgage must also show that asserting jurisdiction over Supreme Lending accords with the Due Process Clause of the U.S. Constitution, and comports with traditional notions of fair play and substantial justice. *Conn v. Zacharov*, 667 F.3d 705, 711 (6th Cir. 2012); *Aerodyne Envtl. v. Keirton*, 628 F. Supp. 3d 744, 749 (N.D. Ohio 2022); *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

### b. Due Process

Specific personal jurisdiction comports with due process under the Constitution where "the defendant has sufficient minimal contacts such that traditional notions of fair play and

substantial justice are not offended" by the exercise of personal jurisdiction over a party. *Aerodyne*, 628 F. Supp. 3d at 751 (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005), and *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945)). To make this determination, a court examines whether: (1) the defendant purposefully avails itself of the privilege of acting or causing a consequence in the forum state; (2) the cause of action arises from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989)).

"[T]he question of whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is the '*sine qua non* for in personam jurisdiction.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (quoting *Southern Machine*, 401 F.2d at 381-82); *Aerodyne Envtl.*, 628 F. Supp. 3d at 752. There must be a substantial connection between a defendant's conduct and the forum state such that a defendant would "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzawicz*, 471 U.S. 462, 474-75 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This standard protects defendants against being haled into court in the forum by virtue of random, fortuitous, or attenuated contacts. *Aerodyne Envtl.*, 628 F. Supp. 3d at 752 (citing *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005), in turn citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

To be jurisdictionally significant, a defendant's contacts with the forum "must arise out of

contacts that the "defendant *himself* creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original) (stated in the context of determining whether a federal security agent in Georgia, who seized property in Georgia, could be haled into a federal court in Nevada because the agent knew that the "harmful effects" of the seizure would be felt by plaintiff in Nevada; the Court, in a unanimous decision, overturned a Ninth Circuit finding of specific personal jurisdiction). Minimum contacts analysis looks to the defendant's contacts with the forum state, not the defendant's contacts with persons who reside in the state or have contacts there. *Id.* "Due process requires that a defendant be haled into court in a forum based on his own affiliation with the State, not based on the . . . contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286. Here, none of Supreme Lending's alleged actions in connection with any of the individual defendants had *any* connection with Ohio, nor do any of the activities at issue show a "purposeful availment" of the benefits of Ohio law by Supreme Lending. Every activity, contact, or event identified in the *Verified Complaint* occurred in either Florida or Texas. Even Supreme Lending's alleged "knowledge" that Union Home is based in Ohio or its "knowledge" that one or more of the individual defendants' contracts with Union Home Mortgage contained an Ohio choice of law provision or Ohio venue provision were, or would have been, based on Supreme Lending's interactions with the individual defendants outside of Ohio, in either Florida or Texas. These are not actions directed by Supreme Lending toward Ohio.

Nor is this analysis any different by virtue of Union Home Mortgage's allegations asserting an intentional tort, such as "tortious interference with contract" – which is the only claim asserted against Supreme Lending. (ECF #1, ¶¶ 101-112). As stated by the Supreme Court

in *Walden v. Fiore*, 571 U.S. 277, at 286, "These same principles apply when intentional torts are involved. In that context, it is likewise insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, Union Home Mortgage alleges that Supreme Lending induced Florida employees to breach non-recruitment and non-competition covenants outside of Ohio. This does not allege any activity by Supreme Lending directed toward Ohio.

Union Home Mortgage offers four cases to support its proposition that asserting personal jurisdiction over Supreme Lending would comport with due process. But each of these cases involved out-of state defendants who themselves took direct actions to purposefully avail themselves of the protections of Ohio law, and the claims of those cases arose from the defendants' *own connections* to the forum. *See American Sec. & Audio Video Sys. v. Prep TMT, LLC*, Case No. 5:22-CV-0558, 2023 U.S. Dist. LEXIS 66201 (N.D. Ohio Apr. 14, 2023) (Ohio plaintiff brought breach of contract claims against Missouri defendant who had entered into contracts with the Ohio-based plaintiff which designated Ohio law as controlling; defendant had dealt with plaintiff's employees in Ohio to obtain trade secret information; and defendant had used plaintiff's trade secrets to undermine plaintiff's relationship with a customer for whom plaintiff performed work in Ohio); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) (Michigan plaintiff brought fraudulent transfer claims against Kansas defendant who had conducted business with the Michigan-based plaintiff for over nine years; defendant had sent purchase orders to Michigan on which the later breach of contract claims were

based; defendant had incurred debt to Ohio plaintiff based on those dealings, which debt was reduced to a judgment [in Kansas]); *EHPLabs Rsch., LLC v. Smith*, Case No. 5:22-CV-0653, 2022 U.S. Dist. LEXIS 140040 (N.D. Ohio Aug. 5, 2022) (Delaware plaintiff brought breach of sponsorship contract claims against Ohio defendant and two out-of-state defendants, including the out-of-state defendants' individual owner, based on the out-of-state defendants' alleged tortious inducement of the Ohio defendant to enter into contracts with them in competition with plaintiff; although individual owner defendant had only traveled to Ohio one time, court found personal jurisdiction because individual owner had "purposefully availed" himself of Ohio law by causing his companies to enter into contracts with the Ohio defendant, which actions were the *direct* subject of plaintiff's claims); *J4 Promotions, Inc. v. Splash Dogs, LLC*, Case No. 08-CV-0977 (N.D. Ohio Feb. 13, 2009) (Ohio plaintiff dog-event promoter brought action in Ohio against California-based copycat competitor and several of its non-Ohio-resident agents based on copyright infringement, defamation, deceptive practice, and unfair competition; court found specific personal jurisdiction because defendants had maintained website promoting defendants' dog show in Ohio, because plaintiff's claims were partially based on that Ohio event, and because defendant's misconduct allegedly arose from the Ohio-based plaintiff's former employment of two of defendant's agents).[7]

---

[7] The court in *J4 Promotions* also found specific jurisdiction over plaintiff's tortious interference claims, even though all of the defendants' alleged conduct related to those claims occurred outside of Ohio, because defendants allegedly knew that their conduct would have effects in Ohio. *J4 Promotions*, 2009 U.S. Dist. LEXIS 11023, at *58-*59. This case predates the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), in which the Court rejected the theory that a defendant's acts conducted wholly outside the forum could support specific jurisdiction based solely on the fact that defendant "knew" that the plaintiff had connections with the forum state. *Walden*, 571 U.S. at 288-89 & 290 (""[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or

The Court finds that *Total Quality Logistics, LLC v. Tarpon Transp. Servs.*, Case No. 1:18-CV-0353, 2019 U.S. Dist. LEXIS 157672 (S.D. Ohio Sept. 16, 2019), is a more applicable case. In *TQL*, a Florida resident (Minnis) had signed an employment agreement containing a "Confidentiality Agreement and Restrictive Covenant" with an Ohio-based freight broker (TQL). He was later terminated by TQL. Approximately 18 months later, Minnis went to work for a Florida-based competitor (Tarpon), in alleged violation of his earlier employment agreement. TQL then sued Tarpon in an Ohio court, alleging that Tarpon had tortiously interfered with the employment agreement between TQL and Minnis. Tarpon moved to dismiss for lack of personal jurisdiction. The court concluded that it lacked specific jurisdiction over Tarpon because Tarpon had not taken any actions that created a substantial connection with Ohio, and that merely hiring a Florida employee who had a still-operative employment agreement with an Ohio company was not enough to confer specific personal jurisdiction. *Total Quality Logistics*, 2019 U.S. Dist. LEXIS at *10 (citing *Walden*, 571 U.S. at 290)).

The fact that the individual defendant former Union Home Mortgage employees may have had an Ohio law forum selection clause in their employment agreements does not change the analysis under the facts of this case. While a third party may be bound by a forum selection clause in a contract that it did not sign if the non-signatory is sufficiently "closely related " to the dispute that it is foreseeable that the non-signatory would be bound, *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105-06 (6th Cir. 1997), the facts identified here do not support a finding of a requisite "sufficiently close relationship" of Supreme Lending to the Union Home

---

works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Thus, this part of the *J4 Promotions* decision is not reflective of the current law.

Mortgage employment contracts to find that Supreme Lending should be bound by them.[8]

In "determining whether a non-signatory is closely related to a forum selection clause 'a common sense, totality of the circumstances approach' is utilized." *Firexo, Inc. v. Firexo Grp., Ltd.*, Case No. 3:21-CV-2336, 2023 U.S. Dist. LEXIS 60525, at *3 (N.D. Ohio Jan. 26, 2023) (citing *Reagan v. Maquet Cardiovascular U.S. Sales LLC*, Case No. 1:14-CV-0548, 2015 WL 521049, at *3 (N.D. Ohio Feb. 9, 2015) and quoting *Hitachi Med. Sys. Am., Inc.*, Case No. 5:09-CV-2613, 2011 WL 711568, at *9 (N.D. Ohio Feb. 22, 2011)). Under this approach, a court must determine "whether, in light of [the] circumstances, it is fair and reasonable to bind a non-party to the forum selection clause." *Firexo*, 2023 U.S. Dist. LEXIS 60525, at *3.

To determine whether a non-signatory to a contract is sufficiently closely related to a dispute to hold it bound by the contract, courts in the Sixth Circuit generally look to whether the signatory owns or controls the non-signatory, whether the non-signatory is the signatory's agent, or whether the non-signatory would directly or indirectly benefit from the contract. *See, e.g.*,

---

[8] There is no question that Supreme Lending was not a direct party to any of the employment contracts between Union Home Mortgage and the individual defendants, or that Supreme Lending agreed to the Ohio law and forum selection provisions contained within them. At most, Union Home Mortgage identifies a possibility that Supreme Lending was aware of the fact that Union Home Mortgage was an Ohio corporation, and that the standard Union Home Mortgage employment contract contained an Ohio law and forum selection clause. (*See, e.g.*, ECF #26, *Affidavit of Douglas Long*, PageID #306, ¶ 7): "There can be almost no doubt that when Supreme hired Tuttle and when it caused Tuttle to breach his employment agreement with Union Home, Supreme knew that Union Home was an Ohio corporation and knew that Tuttle's Union Home employment agreement, like all standard Union Home employment agreements, contained non-solicitation provisions and contained a provision designating Ohio as the exclusive law and forum for any litigation arising out of those agreements. Indeed, Supreme's Chief Operating Officer, Kevin Pezzani, was a Senior Vice President in Union Home's Ohio headquarters for more than 5 years before he joined Supreme in 2021. By virtue of his position, Pezzani was familiar with, and had first-hand knowledge of, the terms in Union Home's employment contracts.").

*Firexo, Inc. v. Firexo Grp., Ltd.*, Case No. 3:21-CV-2336, 2023 U.S. Dist. LEXIS 60525, at *3-*4 (N.D. Ohio Jan. 26, 2023) (joint venture was sufficiently related to dispute arising under the joint venture agreement that created it to be bound by the agreement's forum selection clause, even though the joint venture itself did not sign the joint venture agreement); *see also Petti v. Fraker*, Case No. 1:19-CV-0087, 2020 U.S. District LEXIS 265117, at *31-*32 & nn. 118-123 (N.D. Ohio Aug. 19, 2020) (citing cases recognizing the following types of relationships as "closely related": "shareholders, officers, and directors of a corporation with regard to a corporate contract"; "[c]orporations wholly owned and controlled by a signatory to a contract containing a forum-selection clause"; "a non-signatory who is in an agency relationship with one of the parties to a contract containing a forum-selection clause"; "a non-signatory who is a third-party beneficiary of the contract that contains a forum-selection clause"; and "an assignee to [a] contract that contains a forum-selection clause") (internal quotation omitted). While this list may not be exclusive, Superior Lending's relationship to the Union Home Mortgage employment contracts is not even close to any of these relationships.[9]

---

[9] Union Home Mortgage cites three cases from other circuits where a district court held that, when a former employer sues a former employee to enforce a restrictive covenant in an employment agreement, the new employer should be bound by the forum selection clause in the agreement. (*See* ECF #24, PageID #272-273 [pp. 9-10 of brief], at n.3, citing *Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1056 (D. Minn. 2008); *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, Case No. 2:16-CV-9152, 2017 U.S. Dist. LEXIS 13357, at *23-*24 (C.D. Cal. Jan. 31, 2017); *Radian Guar., Inc. v. Bolen*, 18 F. Supp. 3d 635, 647 (E.D. Pa. 2014) (acknowledging proposition but not finding jurisdiction based on lack of close business relationship and knowledge of non-competition agreement). The Court has considered these cases, but finds that they are not representative of the standard of "closely related" recognized under Sixth Circuit law. Moreover, under a "common sense, totality of the circumstances approach," in light of the lack of any Ohio connection to the facts of this case, binding Superior lending to the Union Home Mortgage "standard" choice of law and forum selection clauses seems neither fair nor reasonable.

Put simply, Plaintiff Union Home Mortgage has not met its burden of demonstrating sufficient minimum contacts with Ohio by Supreme Lending to establish that specific personal jurisdiction over Supreme Lending would "comport with traditional notions of fair play and substantial justice" under the standards of the Due Process Clause of the U.S. Constitution. *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).

### III. CONCLUSION

Accordingly, for the foregoing reasons, *Defendant Everett Financial Inc., dba Supreme Lending's Motion to Dismiss for Lack of Personal Jurisdiction* (ECF #12) is GRANTED. Plaintiff Union Home Mortgage's claims against individual defendants Andrew Kyle Tuttle, James M. Fisher, Kathryn Henry, and Ryan Larson remain before the Court.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: October 4, 2023